CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 17, 2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **RONNIE B. BULLOCK,** )  | |
|   Plaintiff, ) | Case No. 7:23-cv-00337 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| **JAMES HAMBY, et al.,** ) | Senior United States District Judge |
|   Defendants. ) | |

## MEMORANDUM OPINION

Ronnie B. Bullock, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging that he received inadequate medical treatment while incarcerated at Keen Mountain Correctional Center. Pending before the court is a motion to dismiss filed by defendant D. Ball, NP ("Nurse Practitioner Ball"). ECF No. 13. The motion has been fully briefed and is ripe for review. ECF Nos. 14, 16. For the reasons set forth below, the motion to dismiss is **DENIED**.

## Background

The following summary of the facts is taken from the complaint and the attached affidavit. See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint."). The facts are accepted as true for purposes of ruling on the pending motion to dismiss. See id. at 440.

In February 2021, Bullock had a tooth extracted by Dr. James Hamby. Compl. Aff., ECF No. 1-1, at 5. During the procedure, Dr. Hamby broke the tooth and left the bottom

piece in Bullock's gum. Id. As a result, Bullock had to undergo oral surgery in March 2021. Id. at 6.

Approximately six months later, on September 8, 2021, Bullock noticed "a little pain in [his] lower back while [he] was exercising." Id. The following month, Bullock felt "a little pain" in his left side and lower back. Id. He saw Nurse Practitioner Ball in December 2021. Id. She scheduled an x-ray and informed Bullock that he appeared to have "arthritis in [his] back." Id.

On April 4, 2022, Bullock's "back g[ave] out" while lifting a trash bag at work, and sharp pain radiated down his spine. Id. at 7. The following day, Bullock placed a sick-call request to see Nurse Practitioner Ball. Id. He explained to the sick-call nurse what had happened, and the nurse instructed him to wait until his appointment with the nurse practitioner. Id. Over the next 10 days, Bullock experienced pain so severe that he was unable to walk to the dining hall to retrieve his meal trays. Id. Correctional officers agreed that he should remain in his cell and have his meal trays delivered to him. Id.

On or about April 15, 2022, Bullock saw Nurse Practitioner Ball and "explain[ed] everything" that had happened. Id. at 7. Bullock told her that he was experiencing "excruciating" pain that was becoming worse every day and that he could not "even sit down on the toilet without pain." Id. at 7–8. Nurse Practitioner Ball initially prescribed "pain pills" and "muscle relaxers." Id. at 8. However, once Bullock began receiving the muscle relaxers, "the pain pills stopped." Id. Bullock placed another sick-call request "to get the pain pills started back, and to let [Nurse Practitioner Ball] know that he [was] not improving." Id.

2

On or about May 15, 2022, Bullock placed a sick-call request to see the doctor, but he saw Nurse Practitioner Ball instead. Id. Bullock advised her that the pain had not gotten better, that the pain pills were not working, and that he was "eating them like candy because of the pain." Id. Bullock suggested that he needed "x-rays, [an] MRI, a CAT scan or something." Id. X-rays were subsequently taken on May 23, 2022. Id. at 9. Nurse Practitioner Ball informed Bullock that "the x-rays show[ed] that everything [was] within normal limits," thus leading her to believe that "everything [was] alright." Id. However, that belief was wrong, and Bullock's condition continued to deteriorate. Id.

On or about June 7, 2022, Bullock submitted another sick-call request to see Nurse Practitioner Ball. By that point, Bullock had lost more than 50 pounds and his blood pressure, which had never been a problem, was "always very high." Id.; see also id. ("I . . . went from 192 lbs down to 137 lbs."). Bullock explained to Nurse Practitioner Ball that his condition was worsening; that he still could not "bend over, reach, walk, [or] even cough or sneeze" without experiencing severe pain; and that he had become "severely constipated." Id. Ball prescribed "high blood pressure medicine" and "stool softeners" but took no other action. Id.

On or about July 6, 2022, Bullock saw Nurse Practitioner Ball again after placing a sick-call request. Id. He informed Ball "that the x-rays must have missed something," and "that the pain [he had was] beyond bones [and extended to his] flesh, tissue, ligaments, tendons, muscles, etc." Id. Bullock alleges that he was "somewhat hysterical" at that point and that he told Ball that he needed to undergo an MRI or CAT scan immediately. Id.

Two weeks later, on July 21, 2022, Bullock was transported to a local hospital for a CAT scan. Id. at 10. The following day, Dr. Fox, a prison physician, called Bullock to the

3

medical building and informed him that he was "going to die" unless he was immediately transported to VCU Medical Center in Richmond. Id. Dr. Fox explained that "a poisonous type of bacteria [had] entered his bloodstream" and spread throughout his body. Id. Dr. Fox asked whether Bullock had undergone dental work recently, and Bullock informed him about the tooth extraction that Dr. Hamby had performed in 2021. Id. Dr. Fox told Bullock that "the bacteria may have come from [an] abscess or cavity, or some type of dental work." Id.

Bullock was transported to VCU Medical Center that same day, and he received intravenous antibiotics at the hospital for approximately six days. Id. at 11. After being discharged from the hospital, Bullock stayed in the infirmary at Greensville Correctional Center for approximately 30 days, where he continued to be treated with antibiotic medications. Id.

Bullock subsequently filed suit against Dr. Hamby and Nurse Practitioner Ball. With respect to Nurse Practitioner Ball, Bullock claims that the delay in ordering a CAT scan or other diagnostic testing after his condition continued to deteriorate violated his Eighth Amendment right to adequate treatment. See id. at 12 ("I had to go through (3) months of severe pain, very high blood pressure, weight loss, and being mistreated before I finally got a CAT scan. I am sure that divine intervention saved my life."); see also Pl.'s Resp. Mot. Dismiss, ECF No. 16, at 2 ("From April 2022, until July 2022, Plaintiff had to suffer greatly because of . . . [Nurse Practitioner Ball's] delay in providing the proper medical care.").

## Standard of Review

Nurse Practitioner Ball has filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) permits defendants to seek dismissal for "failure to state a

claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While "detailed factual allegations" are not required, "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." Wilcox v. Brown, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe pleading requirements liberally." Id. Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A complaint filed by a pro se plaintiff "still must contain enough facts to state a claim for relief that is plausible on its face." Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

## Discussion

Bullock claims that Nurse Practitioner Ball violated his rights under the Eighth Amendment. "The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII).

5

"Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). An Eighth Amendment violation occurs when a defendant "demonstrates 'deliberate indifference' to an inmate's serious medical needs." Id.

An Eighth Amendment claim of deliberate indifference has two components. Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). The plaintiff must show that he had serious medical needs (the objective component) and that a defendant acted with deliberate indifference to those needs (the subjective component). Hixson v. Moran, 1 F.4th 297, 302 (4th Cir. 2021). A medical need is sufficiently serious for purposes of the objective component "when it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks omitted). Nurse Practitioner Ball does not dispute that Bullock's allegations are sufficient to satisfy the objective component. Instead, Ball argues that Bullock has failed to allege facts sufficient to satisfy the subjective component of deliberate indifference. See Def.'s Br. Supp. Mot. Dismiss, ECF No. 14, at 6–8.

"Deliberate indifference is 'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'" Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)). To establish deliberate indifference, a plaintiff must show that a defendant "subjectively knew of and disregarded an excessive risk to the inmate's health or safety." Hixson, 1 F.4th at 302. "Under this standard, mere disagreements between an inmate and a

6

physician over the inmate's proper medical care are not actionable absent exceptional circumstances," Scinto, 841 F.3d at 225 (internal quotation marks and alterations omitted), and "evidence that might show medical malpractice is not necessarily sufficient," Phoenix v. Amonette, 95 F.4th 852, 853 (4th Cir. 2024). "In the context of a claim related to the denial of medical treatment, a defendant acts with deliberate indifference if he had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." Gordon, 937 F.3d at 357 (internal quotation marks and alterations omitted). "A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence that a prison official knew of a substantial risk from the very fact that the risk was obvious." Scinto, 841 F.3d at 226 (internal quotation marks omitted).

"The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care." Formica v. Aylor, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis omitted) (citing Estelle v. Gamble, 429 U.S. 97, 104–05 (1976)). Deliberate indifference also can be established "by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment." King. v. United States, 536 F. App'x 358, 362 (4th Cir. 2013) (internal quotation marks omitted). The United States Court of Appeals for the Fourth Circuit has "rejected the notion that simply because medical staff have provided an inmate with 'some treatment' that 'they have necessarily provided [the inmate] with constitutionally adequate treatment." Stevens v. Holler, 68 F.4th 921, 933 (4th Cir. 2023) (emphasis in original) (quoting De'lonta v. Johnson,

7

708 F.3d 520, 526 (4th Cir. 2013)). "Rather, 'the treatment a prison facility [provides] must . . . be adequate to address the prisoner's serious medical needs.'" Id. (alterations in original) (quoting De'lonta, 708 F.3d at 526). Additionally, "government officials who ignore indications that a prisoner's or pretrial detainee's initial medical treatment was inadequate can be liable for deliberate indifference to medical needs." Id. (internal quotation marks omitted).

Applying these principles, the court concludes that Nurse Practitioner Ball's motion to dismiss must be denied. At this stage of the proceedings, Bullock has plausibly alleged that the treatment Ball provided in June 2022 was constitutionally inadequate and that Ball knew of and disregarded an excessive risk to Bullock's health. By that point, according to the complaint, Bullock was experiencing increasingly severe and debilitating pain throughout his body, his blood pressure had spiked, and he had rapidly lost 55 pounds—nearly 30 percent of his body weight. Nonetheless, rather than ordering additional diagnostic testing to determine the cause of Bullocks' deteriorating physical state, Nurse Practitioner Ball merely prescribed stool softeners for constipation and high blood pressure medication. Bullock continued to suffer excruciating pain for over a month before finally undergoing a CAT scan that revealed a potentially fatal bacterial infection. These factual allegations, which must be accepted as true at this stage of the proceedings, plausibly suggest that Ball "knew of a substantial risk from the very fact that the risk was obvious," Scinto, 841 F.3d at 226 (internal quotation marks omitted), and that she consciously disregarded that risk by failing to order additional diagnostic testing in a timely manner. Consequently, Bullock has sufficiently alleged that Ball acted with deliberate indifference to his serious medical needs by intentionally delaying medical treatment and/or providing grossly inadequate care. See, e.g., Colardo-Keen v. Rockdale Cnty., 775 F.

8

App'x 555, 569 (11th Cir. 2019) ("If unexplained, protracted delay in the treatment of a serious medical risk can constitute deliberate indifference, including a delay of diagnostic care.") (internal citations omitted); King, 536 F. App'x at 362 (explaining that deliberate indifference can be satisfied "by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment" and that "[t]his standard can be satisfied when the need for treatment is obvious yet prison officials merely provide medical care which is so cursory as to amount to no treatment at all") (internal quotation marks omitted); McElligott v. Foley, 182 F.3d 1248, 1258 (11th Cir. 1999) (holding that a jury could find that, "rather than try to diagnose and treat [the inmate's] worsening condition, the defendants knowingly took an easier but less efficacious course of treatment, reflecting their deliberate indifference to the pain and suffering he was experiencing," and that "a jury could also find deliberate indifference in defendants' failure to do anything to alleviate [the inmate's] pain or even monitor his condition from February 5–February 10, 1997, when Dr. Foley finally decided to order much-needed and long-overdue testing").

In reaching this decision, the court expresses no opinion as to whether Bullock will ultimately prevail on his claim once Nurse Practitioner Ball is given the opportunity to clarify and explain her actions with respect to Bullock's medical treatment. At summary judgment, Ball may be able to establish that she was "not indifferent to [Bullock's] medical ailments" or that her actions or inactions at most "amount[ed] to negligence," which is not actionable under § 1983. Def.'s Br. Supp. Mot. Dismiss, ECF No. 14, at 7. At this stage of the proceedings, however, the court is "tasked with deciding only whether [Bullock] has alleged sufficient facts to support a claim that he was denied adequate and timely medical care in violation of the

Eighth Amendment, such that it would be improper to dismiss the complaint pursuant to Rule 12(b)(6)." Oxendine v. Kaplan, 241 F.3d 1272, 1279 (10th Cir. 2001). For the foregoing reasons, the court concludes that Bullock has done so.

## Conclusion

For the reasons stated, Nurse Practitioner Ball's motion to dismiss under Rule 12(b)(6), ECF No. 13, is **DENIED**. An appropriate order will be entered.

Entered: September 17, 2024

Mike Urbanski
Senior U.S. District Judge
2024.09.17 12:30:56
-04'00'

Michael F. Urbanski
Senior United States District Judge