Case 7:23-cv-00337-MFU-JCH   Document 62   Filed 08/05/25   Page 1 of 13
Pageid#: 359

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
August 05, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RONNIE B. BULLOCK, )<br>    Plaintiff, ) | Case No. 7:23-cv-00337 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| JAMES HAMBY, et al., ) | Senior United States District Judge |
|     Defendants. ) | |

## MEMORANDUM OPINION

Ronnie B. Bullock, a state inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against Dr. James Hamby and Nurse Practitioner D. Ball. Bullock claims that he received inadequate dental and medical treatment while incarcerated at Keen Mountain Correctional Center (KMCC). The defendants have moved for summary judgment on the basis that Bullock failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). For the reasons set forth below, the motions for summary judgment, ECF Nos. 45 and 54, are **GRANTED**.

### I.   Background

**A.   Summary of Allegations and Claims**

Bullock alleges that he underwent a tooth extraction by Dr. Hamby in February 2021, during which Dr. Hamby broke the tooth and left the bottom piece in his gum. Compl. Aff., ECF No. 1-1, at 5. As a result, Bullock had to undergo oral surgery. Id. at 6.

In September 2021, Bullock began experiencing pain in his lower back. Id. Over the next several months, the pain worsened to the point that Bullock was unable to walk to the dining hall for meals. Id. at 7. By June 2022, after seeing Nurse Practitioner Ball on several

occasions, Bullock had lost weight, his blood pressure was elevated, and he could not move without experiencing severe pain. Id. at 9. He was eventually transported to a local hospital for a CT scan on July 21, 2022, which revealed that a bacterial infection had spread throughout his body. Id. at 10. The following day, a prison physician informed Bullock that the infection could have resulted from dental work and that he needed to be hospitalized immediately. Id.

That same day, Bullock was transported to VCU Medical Center in Richmond, Virginia, where he received intravenous antibiotics for approximately six days. Id. at 11. After being discharged from the hospital, Bullock stayed in the infirmary at Greensville Correctional Center for approximately 30 days, where he continued to be treated with antibiotic medications. Id. He returned to KMCC on or about August 31, 2022. Id. at 11.

On May 26, 2023, Bullock executed a form complaint under 42 U.S.C. § 1983 against Dr. Hamby and Nurse Practitioner Ball. Compl., ECF No. 1, at 2. Bullock claims that Dr. Hamby provided inadequate dental treatment in violation of the Eighth Amendment. Id. at 2–3. He claims that Nurse Practitioner Ball violated the Eighth Amendment by delaying adequate medical treatment. Id. at 3–4.

**B.    Evidence Relevant to Exhaustion**

    **1.    Inmate Grievance Procedure**

The Virginia Department of Corrections (VDOC) has established a grievance procedure for inmates that is set forth in VDOC Operating Procedure (OP) 866.1. Hardin Decl., ECF No. 46-1, at ¶ 4.[1] Grievable issues include "[a]ctions of staff" and "[c]onditions of

---

[1] H. Hardin, whose last name was previously Harr, is the Institutional Grievance Coordinator at KMCC. Hardin Decl. ¶ 1, ECF No. 46-1. The court will refer to her using her current last name.

care under the authority of the [VDOC]." OP 866.1 § III(B)(1)(a) (eff. Jan. 1, 2021), Hardin Decl. Ex. A-A, ECF No. 46-2.

Pursuant to OP 866.1, inmates must first attempt to resolve an issue informally. If a verbal complaint is not resolved to the inmate's satisfaction, the inmate may submit a written complaint. OP 866.1 § I(D)(2). The written complaint "must be received by the Institutional Ombudsman or designated staff within 15 days of the original incident or discovery of the incident." Id. § II(B)(1)(d). Following receipt of a written complaint, "staff have 15 days to provide an appropriate response to the complaint." Id. § I(D)(3). If an inmate does not receive a timely response to a written complaint or if the inmate is dissatisfied with the response, the inmate may file a regular grievance. Id. § I(D)(4). The grieved issue must "[b]e identical to and limited to" the issue raised in the written complaint. Id. § III(B)(1)(c).

Regular grievances must be submitted within 30 days from the date of the incident or the discovery of the incident, unless an exception applies. Id. § III(B)(5). For instance, if a "delay is beyond the offender's control, i.e. injury, sickness, etc.," then the "offender has five days to file their grievance once the reason for delay is no longer valid." Id.

When filing a regular grievance, an inmate "must attach documentation of his attempt to informally resolve the issue." Hardin Decl., ECF No. 46-1, ¶ 6. OP 866.1 lists a number of "supporting documents" that must be filed with a regular grievance, including a copy of the written complaint. OP 866.1 § III(B)(6). Likewise, the "Instructions for Filing" on the grievance form indicate that an inmate "must attach" the written complaint or other documentation used to satisfy the informal complaint process. Hardin Decl. Ex. A-D, ECF No. 46-5. The grievance form also includes a section titled "Results of the Informal Process,"

3

in which an inmate must indicate whether the written complaint or other documentation used to satisfy the informal complaint process is attached to the form. Id.

Following the receipt of a regular grievance, prison officials have two days to accept or reject it. OP 866.1 § I(D)(5). If a regular grievance satisfies the intake criteria, "staff must accept the grievance and log it into VACORIS using the received date." Id. § III(C)(4). If the grievance does not meet the intake criteria, prison officials must return it to the inmate with an explanation for its rejection. Id. § III(C)(5). The grievance form lists several reasons for which a grievance can be rejected at intake, such as for failing to demonstrate that the informal complaint process has been utilized for the issue raised in the grievance. See Hardin Decl. Ex. A-D, ECF No. 46-5. If an inmate disagrees with an intake decision, the inmate may appeal the decision to the Regional Ombudsman within five days. OP 866.1 § III(C)(6).

When a regular grievance is accepted during the intake process, the "Facility Unit Head" or "Assistant Facility Unit Head" is responsible for providing a Level I response within 30 calendar days. Id. § III(F)(1)–(2). If an inmate is dissatisfied with the determination at Level I, the inmate may appeal the determination to Level II. Id. § IV(C). "Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services or Superintendent for Education," and "[f]or most issues, Level II is the final level of review." Hardin. Decl. ¶ 8, ECF No. 46-1. OP 866.1 explains that an inmate must exhaust all of the requirements of the grievance procedure before seeking judicial relief and that "[t]he exhaustion requirement is met only when a Regular Grievance has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." OP 866.1 § V(A)–(B).

### 2. Applicable Grievance Records

On March 22, 2023, nearly seven months after he allegedly returned to KMCC from Greensville Correctional Center, Bullock signed a written complaint addressed to the medical department. Pl.'s Resp. Summ. J. Ex. B, ECF No. 49-1.[2] He left the "Date/Time of Incident" blank and listed Nurse Practitioner Ball as the individual involved in the incident. Id. In the space provided to explain his issue, Bullock provided the following information:

> While incarcerated at KMCC, I had a back injury, because of the reluctance and delay to provide the necessary medical care for me, after (3) months of pain and suffering, I had to immediately be taken and admitted to MCV/VCU and later admitted to Greensville Corr. Ctr. infirmary to save my life.

Id.

On April 13, 2023, Bullock executed a regular grievance alleging that he had not received a response to the written complaint that he signed on March 22, 2023. He asked that the written complaint be filed so that he could move to the next step of the grievance process. Pl.'s Resp. Summ. J. Ex. D, ECF No. 49-1. Hardin responded that no complaint had been received by the grievance department and that Bullock should resubmit the complaint. Id.

On April 18, 2023, Bullock executed another written complaint addressed to the medical department that included the same information as the complaint signed on March 22, 2023. Pl.'s Resp. Summ. J. Ex. G, ECF No. 49-1. He noted that it was his "2nd complaint" regarding the issue and once again left the "Date/Time of Incident" blank. Id. The complaint was logged by the grievance department as KMCC-23-INF-00693 and forwarded to the

---

[2] Bullock acknowledges that the March 22, 2023, written complaint was the first written complaint that he executed regarding the issues giving rise to this action. See Pl.'s Resp. Summ. J., ECF No. 49, at 4 (alleging that he submitted written complaints "as far back as March 22, 2023").

5

medical department. Id. A medical staff member subsequently provided the following response: "Follow sick call procedure. According to your record, you have been seen." Id.

On May 2, 2023, Bullock executed a regular grievance alleging that a bacterial infection had spread throughout his body from an abscess in his mouth as a result of being denied proper medical care at KMCC. He further alleged that he had to be hospitalized immediately after experiencing three months of pain and suffering and that no one at KMCC had "acknowledge[d] the extent of the injuries and pain and suffering that [he] had to go through for [three] months." Pl.'s Resp. Summ. J. Ex. E, ECF No. 49-1. He left the "Date/Time of Incident" blank, as well as the section requiring him to indicate whether a written complaint on the issue or other documentation used to satisfy the informal complaint process was attached to the grievance. Id.

On May 3, 2023, Hardin rejected the grievance at intake because he had not attached a copy of his written complaint or other documentation showing that he had used the informal complaint process. Hardin Decl. ¶ 16, ECF No. 55-2. Hardin checked the box indicating that Bullock must submit documentation showing that he had utilized the informal complaint process for the grieved issue. Pl.'s Resp. Summ. J. Ex. E, ECF No. 49-1; see also Hardin Decl. Attach. D, ECF No. 55-2.

On May 4, 2023, Bullock executed another regular grievance alleging that he had to be hospitalized after experiencing three months of pain and suffering during which he failed to receive adequate medical treatment at KMCC. Pl.'s Resp. Summ. J. Ex. F, ECF No. 49-1. Once again, he left the "Date/Time of Incident" blank, as well as the section requiring him to

6

indicate whether the written complaint on the issue or other documentation used to satisfy the informal complaint process was attached to the grievance. Id.

On May 5, 2023, Hardin rejected the grievance at intake because he had not attached a copy of his written complaint or other documentation showing that he had used the informal complaint process. Hardin Decl. ¶ 17, ECF No. 55-2. Hardin checked the box indicating that Bullock must submit documentation showing that he had utilized the informal complaint process for the grieved issue. Pl.'s Resp. Summ. J. Ex. G, ECF No. 49-1; see also Hardin Decl. Attach. E, ECF No. 55-2.

On May 26, 2023, Bullock executed a form complaint under 42 U.S.C. § 1983 against Dr. Hamby and Nurse Practitioner Ball. See Compl. at 5.

Four days later, on May 30, 2023, Bullock wrote an appeal letter to the Regional Ombudsman. Pl.'s Resp. Summ. J. Ex. A, ECF No. 49-1. He included the regular grievance executed on May 4, 2023, and the written complaint executed on April 18, 2023. See Pl.'s Resp. Summ. J. Exs. F & G, ECF No. 49-1. He added a handwritten notation to the written complaint indicating that he received the medical department's response on May 11, 2023. Pl.'s Resp. Summ. J. Ex. G.

The appeal was received by the Regional Ombudsman on June 6, 2023, and the Regional Ombudsman rejected the appeal as untimely. See Pl.'s Resp. Summ. J. Ex. F ("The intake decision is being returned to you because the 5-day time limit for review has been exceeded.").

Bullock did not file any other regular grievances related to his claims against Dr. Hamby and Nurse Practitioner Ball. See Hardin Decl. ¶ 18, ECF No. 55-2 ("[A] review of Bullock's

7

Grievance File reveals that Bullock only filed two regular grievances related to his allegations, and that both of these regular grievances were rejected at intake because Bullock failed to attach a copy of his informal/written complaint(s) to the regular grievances, as required by VDOC OP 866.1.").

## II. Standard of Review

The defendants have moved for summary judgment on the basis that Bullock failed to exhaust his administrative remedies prior to filing suit. Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To survive summary judgment, there must be sufficient evidence from which a reasonable finder of fact could return a verdict in the nonmoving party's favor. Id. at 252. "Conclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence." Matherly v. Andrews, 859 F.3d 264, 280 (4th Cir. 2017) (internal quotation marks omitted).

## III. Discussion

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S.

8

199, 211 (2007). The exhaustion requirement "serves two main purposes." Woodford v. Ngo, 548 U.S. 81, 89 (2006). First, it "protects administrative agency authority" by giving "an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and by discouraging "disregard of the agency's procedures." Id. (internal quotation marks and brackets omitted). Second, it "promotes efficiency" since claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." Id.

Over the past 20 years, the Supreme Court has "strictly interpreted" the PLRA's exhaustion requirement. Williams v. Carvajal, 63 F.4th 279, 285 (4th Cir. 2023). The Court has held that the provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Court has also held that "proper exhaustion" is required, which means that "a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition for bringing suit in federal court." Woodford, 548 U.S. at 88, 90. The applicable procedural rules "are defined not by the PLRA, but by the grievance process itself." Jones, 549 U.S. at 218. As a result, "[t]he level of detail necessary in a grievance to comply with the grievance procedure will vary from system to system and claim to claim." Id. A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Woodford, 548 U.S. at 83–84.

The only exception to the PLRA's exhaustion requirement is "the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). "Available" means "capable of use for the accomplishment

9

of a purpose, and that which is accessible or may be obtained." Id. at 642 (internal quotation marks omitted). If an administrative remedy is not capable of use to obtain relief, "an inmate's duty to exhaust 'available' remedies does not come into play." Id. at 643. The Supreme Court has identified several circumstances in which an administrative grievance procedure is not "capable of use" in this sense, such as when correctional officials "thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." Id. at 643–44; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

Because exhaustion is an affirmative defense under the PLRA, defendants bear the burden of establishing that an inmate failed to exhaust his administrative remedies. Jones, 549 U.S. at 216. Once defendants establish that a plaintiff failed to exhaust, "the onus falls on the plaintiff to show that remedies were unavailable to him." Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); see also Graham v. Gentry, 413 F. App'x 660, 663–64 (4th Cir. 2011) (concluding that summary judgment was appropriate where an inmate failed to fully comply with a jail's grievance procedure and failed to "adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure").

**A.    Proper Exhaustion**

The court will first address whether the defendants have met their burden of establishing that Bullock failed to exhaust his administrative remedies. As previously explained, the Supreme Court has interpreted the PLRA to require "proper exhaustion" in accordance with "an agency's deadlines and other critical procedural rules," Woodford, 548 U.S. at 90.

10

This "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Id. (internal quotation marks omitted).

Having reviewed the record, the court concludes that no genuine issue of material fact exists as to whether Bullock properly exhausted his claims against the defendants. While Bullock submitted two regular grievances alleging that he had been hospitalized after receiving inadequate treatment at KMCC, the grievances were rejected at intake because he did not attach a written complaint or other documentation showing that he had utilized the informal complaint process, as required by OP 866.1 and the grievance form. Although Bullock submitted a copy of a written complaint to the Regional Ombudsman when he appealed the intake decision, the appeal was rejected as untimely, and it is well settled that merely appealing an intake decision "does not constitute valid exhaustion of remedies under OP 866.1." Hailey v. Clary, No. 7:17-cv-00260, 2018 WL 2123623, at *2 (W.D. Va. May 8, 2018); see also Jackson v. Barksdale, No. 7:17-cv-00031, 2017 WL 3446259, at *3 (W.D. Va. Aug. 10, 2017), aff'd, 707 F. App'x 786 (4th Cir. 2018) (explaining that "final intake decisions do not constitute exhaustion of administrative remedies"). "In order to satisfy the exhaustion requirement, an inmate must correct and resubmit the grievance, have it accepted, and then appeal it to the highest available level of review without satisfactory resolution of the issue." Person v. Davis, No. 7:20-cv-00146, 2021 WL 4429194, at *4 (W.D. Va. Sept. 27, 2021).

In response to the defendants' motions for summary judgment, Bullock emphasizes that he "submitted written complaints [and] regular grievances as it pertains to this matter." Pl.'s Resp. Summ. J., ECF No. 49, at 4. As explained above, however, proper exhaustion is required, which "demands compliance with an agency's deadlines and other critical procedure

11

rules." Woodford, 548 U.S. at 90; see also Cantwell v. Sterling, 788 F.3d 507, 509 (5th Cir. 2015) ("Exhaustion is defined by the prison's grievance procedures, and courts neither may add nor subtract from them."); Brewer v. Mullin, 130 F. App'x 264, 265 (10th Cir. 2005) ("Simply presenting a defective or non-complying grievance . . . does not constitute exhaustion of remedies."). Bullock failed to comply with the VDOC's procedural rules by not attaching a written complaint or related documentation to either of the regular grievances that he submitted to the grievance department. See Prosha v. Coleman, No. 3:22-cv-00183, 2023 WL 5673442, at *9 (E.D. Va. Sept. 1, 2023) (applying this requirement of the VDOC grievance procedure). While Bullock may disagree with this procedural requirement and the intake decisions applying it, an inmate's "disagreement with prison officials as to the appropriateness of a particular procedure under the circumstances, or his belief that he should not have to correct a procedural deficiency does not excuse his obligation to comply with the available process." Thomas v. Parker, 609 F.3d 1114, 1119 (10th Cir. 2010).

For these reasons, the court concludes that no genuine issue of material fact exists as to whether Bullock properly exhausted his claims against the defendants and that the defendants have met their burden of proving that he failed to do so.[3]

**B.   Availability of Administrative Remedies**

Bullock alternatively suggests that administrative remedies were unavailable to him because Hardin rejected the grievances that he filed in May 2023. See Pl.'s Resp. Summ. J.,

---

[3] The court also notes that Bullock's own submissions indicate that his efforts to exhaust his administrative remedies were untimely. Although he allegedly returned to KMCC on or about August 31, 2022, after being hospitalized and treated in the infirmary at another prison, he acknowledges that he did not submit his first written complaint until March 22, 2023, nearly seven months later. See Pl.'s Resp. Summ. J., ECF No. 49, at 4.

12

ECF No. 49, at 4 (asserting that Hardin abused her discretion and displayed "administrative incompetence"). However, "a grievance process is rendered 'unavailable' under the PLRA only if an inmate is actually prevented from using it." Moss v. Harwood, 19 F.4th 614, 623 (4th Cir. 2021). While Bullock obviously disagrees with the intake decisions, no reasonable factfinder could conclude that Hardin or any other prison employee actually prevented him from properly exhausting his administrative remedies. See, e.g., Obregon v. Napier, No. 4:22-cv-00074, 2023 WL 9327326, at *9 (D. Ariz. Sept. 1, 2023) ("Plaintiff's disagreement with the responses to his grievances does not render the procedure effectively unavailable.").

In sum, there is no evidence from which a reasonable factfinder could conclude that Bullock properly exhausted his administrative remedies or that the applicable grievance procedure was unavailable to him through no fault of his own. Accordingly, the defendants are entitled to summary judgment on the exhaustion defense.

### IV.   Conclusion

For the reasons stated, the defendants' motions for summary judgment, ECF Nos. 45 and 54, are **GRANTED**. An appropriate order will be entered.

Entered: August 5, 2025

Michael F. Urbanski
U.S. District Judge
2025.08.05 10:34:09
-04'00'

Michael F. Urbanski
Senior United States District Judge